# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID G. CARLILE,<br><br>Plaintiff,<br><br>v.<br><br>RELIANCE STANDARD INSURANCE COMPANY and RELIANCE STNADARD LIFE INSURANCE POLICY NUMBER LTD 123420,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-1049<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Before the court are cross motions for summary judgment.[1] Plaintiff David Carlile brings this action under the Employee Retirement Security Act (ERISA).[2] Carlile moves for summary judgment arguing Defendants Reliance Standard Life Insurance Company (Reliance) and Reliance Standard Life Insurance Policy Number LTD 123420 (the Policy) wrongfully denied his claim for long term disability benefits. Defendants move for summary judgment on the same claims, arguing the denial of benefits was appropriate. For the reasons discussed below, the court grants Carlile's Motion for Summary Judgment,[3] and denies Defendants' Motion for Summary Judgment.[4]

---

[1] Dkt. 33; dkt. 35.

[2] Dkt. 33 at 2.

[3] Dkt. 33.

[4] Dkt. 35.

## I. BACKGROUND

On November 1, 2012, Carlile began working as Vice President of Marketing for Lighthouse Resources, Inc. (LRI).[5] As part of his employment with LRI, Carlile entered into an Employment Agreement.[6] The Employment Agreement required that Carlile "devote his full working time and his best efforts to the performance of his duties under this Agreement."[7] The Employment Agreement further stated that Carlile's employment would "continue until terminated in accordance with the provisions of this Agreement."[8] According to the Employment Agreement's termination provisions, LRI could terminate Carlile under a number of circumstances. Section 4(a)(iv) provided that LRI could terminate Carlile "without Cause upon 90 days prior written notice to [Carlile] (the company may elect to pay Employee for the whole or part of this notice period that it does not require Employee to work . . . )."[9] Importantly, the Employment Agreement states that Carlile's termination would take effect "as of the date specified in the notice of termination."[10]

LRI provided Carlile with long term disability insurance (the Plan) through Reliance.[11] The Plan supplied disability benefits to "Eligible Classes."[12] In part, the Plan defines "Eligible Class" as "[e]ach active, Full-time employee, except any person employed on a temporary or

---

[5] Joint Administrative Record (JAR) at LTD212 (Dkt. 34-2 at 213).

[6] *Id*. at LTD416 (Dkt. 34-2 at 147).

[7] *Id.* at LTD417 (Dkt. 34-2 at 148).

[8] *Id.* at LTD418 (Dkt. 34-2 at 149).

[9] *Id.* at LTD420 (Dkt. 34-2 at 151).

[10] *Id.* at LTD421 (Dkt. 34-2 at 152).

[11] *Id.* at LTD1 (Dkt. 34-2 at 2). LRI also provided Carlile with short term disability benefits. *See* R. at STD1 (Dkt. 36-1 at 1).

[12] *Id.* at LTD7 (Dkt. 34-1 at 8).

seasonal basis."[13] The Plan does not define the word "active," but defines "Full-time" as: "working . . . for a minimum of 30 hours during a person's regular work week."[14] With respect to eligibility, the Plan states that coverage will terminate "on the last day of the Policy month in which the Insured ceases to meet the Eligibility Requirements."[15]

In early 2016, LRI experienced an economic downturn. As a result, LRI issued Carlile a notice of termination on March 21, 2016.[16] The notice explained that Carlile's termination date was June 20, 2016.[17] The notice further detailed how Carlile was to be compensated prior to his termination date, stating:

> You will receive ("Compensation") pursuant to your employment agreement for the period through 6/20/16, which includes the notice period in your employment agreement (the "Termination Date). Compensation includes paid time off earned but not yet taken through the Termination Date and your Compensation will be paid in a lump sum on or before 3/31/16.[18]

Carlile continued to work for LRI through the notice period, attending work-related conferences from March 7, 2016 through May 8, 2016.[19] LRI continued to pay Plan premiums to Reliance until Carlile's Termination Date.

On May 31, 2016, Carlile was diagnosed with prostate cancer.[20] As a result of the demands of cancer treatment, Carlile's last day of full-time work for LRI was June 7, 2016.[21] Carlile

---

[13] *Id.*

[14] Id. at LTD9 (Dkt. 34-1 at 10).

[15] *Id.* at LTD15 (Dkt. 34-1 at 16).

[16] *Id.* at LTD490 (Dkt. 34-2 at 221). Carlile previously received a notice of termination in November 2014. *Id.* at LTD412 (Dkt. 34-2 at 143). At the end of the termination period, however, LRI opted not to terminate Carlile's employment. *Id.*

[17] *Id.* at LTD490 (Dkt. 34-2 at 221).

[18] *Id.*

[19] *Id.* at LTD430 (Dkt. 34-2 at 161).

[20] *Id.* at LTD149 (Dkt. 34-1 at 150).

[21] *Id.* at LTD 480 (Dkt. 34-2 at 211).

submitted a claim to Reliance for short-term disability benefits on June 17, 2016,[22] which Reliance subsequently approved.[23]

On October 16, 2016, Carlile timely applied for long-term disability benefits under the Plan.[24] On November 14, 2016, Reliance emailed LRI regarding Carlile's long-term disability application.[25] Reliance asked LRI to "confirm [] Carlile's last day worked and date of work stoppage."[26] In response, LRI identified June 7th as Carlile's "last day worked."[27] Reliance then asked LRI to "confirm [the] last full-time active day [Carlile] worked,"[28] whether Carlile "was terminated due to the March 2016 reduction in force," and if so, when Carlile was given "notice of termination," and when was he told to stop coming to work?"[29] LRI responded, "[Carlile] was terminated due to the March 2016 reduction in force," identified March 21, 2016 as the date Carlile was given notice, and stated Carlile's last day worked was June 7th.[30] LRI explained that at the time Carlile was given notice, "he was told that he didn't need to work through the termination date, but he chose to come into the office at his convenience during the months leading up to his termination date."[31]

In a letter dated February 3, 2017, Reliance denied Carlile's claim for long-term disability.[32] Reliance provided the following reason for denying Carlile's claim:

---

[22] R. at STD100 (Dkt. 36-1 at 100).

[23] *Id.* at STD28–30 (Dkt. 36-1 at 28–30).

[24] *Id.* at STD145 (Dkt. 36-1 at 145).

[25] JAR at LTD 480 (Dkt. 34-2 at 211).

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* LRI included a copy of the notice of termination in an attachment.

[31] *Id.*

[32] *Id.* at LTD91–95 (Dkt. 34-1 at 92–96).

4

> Because you were given notice of termination as of 3/21/2016 and no longer required to work at that point your LTD coverage under the Policy would have terminated as of 3/31/2016, the last day of the Policy month in which you ceased to meet the Eligibility requirements, as you were no longer working Full-time for our Policyholder group and were no longer part of an Eligible Class of employees.[33]

In the letter, Reliance further stated that "[a]lthough the final separation agreement from [LRI] states your separation date as 6/20/16, payroll records show that you had no record of regular hours worked past 3/21/2016 and received your final separation pay as of 3/31/2016."[34] Carlile timely appealed Reliance's denial on March 15, 2017.[35] In a letter dated April 20, 2017, Reliance acknowledged the last day Carlile worked for LRI was June 7, 2016, but stated it was "in need of information which documents the specific hours [Carlile] worked during the days and months following your termination on March 31, 2016."[36] Reliance then reached out to LRI via email requesting that LRI "provide any specific information regarding hours [Carlile] worked up until his date of loss."[37] The Human Resource Director for LRI responded that "[s]ince [Carlile] was an exempt employee, his hours were not tracked. I, along with other employees, can confirm that he had worked in the office throughout his notice period."[38] LRI also provided expense reimbursements for business trips Carlile had taken on behalf of LRI on: March 7– 10, 2016; April 7–14, 2016; and April 30–May 8, 2016.[39]

---

[33] *Id.* at LTD94 (Dkt. 34-1 at 95).

[34] *Id.* at LTD93 (Dkt. 34-1 at 94).

[35] *Id.* at LTD403–08 (Dkt. 34-2 at 134–39).

[36] *Id.* at LTD99 (Dkt. 34-1 at 100).

[37] *Id.* at LTD431–32 (Dkt. 34-2 at 162–63).

[38] *Id.*

[39] *Id* at LTD430 (Dkt. 34-2 at 161).

On June 12, 2017, Reliance issued a letter denying Carlile's appeal, with the following rationale:[40]

> Unfortunately, there is no documentation, nor confirmation that you remained an active, full-time employee beyond March 21, 2016, other than two business trips in April and May. We understand that you continued to perform duties of your occupation with [LRI], but it does not appear that you did so on a full-time basis, working a minimum of 30 hours per week as mandated by the Policy in order to be eligible for LTD coverage.[41]

In a footnote, Reliance stated: "We are aware, per Lori Miller of [LRI], that you worked in the office throughout your notice period; however, there was no information provided, nor confirmation that you maintained a 30-hour work week."[42]

On September 20, 2017, Carlile filed an ERISA Complaint challenging Reliance's denial of his long-term disability claim.[43] Carlile moved for summary judgment on October 15, 2018.[44] The same day, Reliance filed its Cross-Motion for Summary Judgment.[45] The court now takes up the parties' fully briefed motions.

## II. LEGAL STANDARD

When considering cross motions for summary judgment under ERISA, "the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[46] The court reviews a denial of benefits "under a de novo standard unless the benefit plan gives the administrator or

---

[40] *Id.* at LTD101–12 (Dkt. 34-1 at 102–113).

[41] *Id.* at LTD104 (Dkt. 34-1 at 105).

[42] *Id.*

[43] Dkt. 2.

[44] Dkt. 33.

[45] Dkt. 35.

[46] *LaAsmar v. Philips Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).

6

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[47] Here, the parties agree the applicable standard of review is de novo because the Plan "does not grant discretion to Reliance."[48]

"When applying a *de novo* standard, the court reviews a denial of benefits to determine whether the administrator made a correct decision."[49] This standard does not require the court to decide whether "'substantial evidence' or 'some evidence' supported the administrator's decision; it is whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the [] court's independent review."[50] In the court's independent review, "the administrator's decision is accorded no deference or presumption of correctness."[51]

### III. ANALYSIS

Carlile first argues that he was eligible for benefits when he submitted his long-term disability claim. Second, Carlile argues that Reliance is not entitled to remand to determine whether Carlile was Totally Disabled under the Policy.

**1. Carlile was an active, Full-time employee at the time his disability arose.**

When interpreting an ERISA plan, the court examines "the plan documents as a whole and, if unambiguous, construe[s] them as a matter of law."[52] "Ambiguity exists when a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term."[53] To determine whether plan language is ambiguous, the language must

---

[47] *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

[48] Dkt. 35 at 11.

[49] *Niles v. Am. Airlines, Inc.*, 269 F. App'x 827, 832 (10th Cir. 2008) (unpublished) (citing *Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 808–09 (6th Cir.2002)).

[50] *Id.* at 833.

[51] *Id.* at 832.

[52] *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007) (citation omitted).

[53] *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1318 (10th Cir. 2009).

7

be given the "common and ordinary meaning as a reasonable person in the position of the [plan] participant . . . would have understood the words to mean."[54] "The doctrine of *contra proferentem*, which construes all ambiguities against the drafter, applies to *de novo* review of ERISA plans."[55]

Reliance argues that it properly denied Carlile's claim. Reliance maintains that Carlile was not eligible for benefits under the Plan because he was not an "active, Full-time employee;" meaning, Carlile must have been working minimally 30 hours per week.[56] The court disagrees with Reliance's adopted rationale, and in so doing, finds the case of *Tester v. Reliance Standard Life Ins. Co.*[57] particularly illustrative.

In *Tester*, the Fourth Circuit addressed the issue of whether a claimant is an "active, Full-time employee" even though they do not meet the minimum hourly work week requirement.[58] Mrs. Tester obtained an insurance policy by virtue of her employment.[59] The policy was issued by Reliance and provided for death benefits–Mrs. Tester named her husband as sole beneficiary.[60] The policy included the following eligibility requirement: "Eligibility: Each active, Full-time and Part-time employee, except any person employed on a temporary or seasonal basis."[61] The policy did not include a definition for "active," but defined a "Full-time" employee as one who works "a minimum of 20 hours during [the] person's regular work week."[62] During the coverage

---

[54] *Miller*, 502 F.3d at 1249 (citation omitted).

[55] *Rasenack*, 585 F.3d at 1318 (citing *Miller*, 502 F.3d at 1249, 1253).

[56] Dkt. 38 at 17, 22, *see also* JAR at LTD109 (Dkt. 34-1 at 110).

[57] 228 F.3d 372 (4th Cir. 2000).

[58] *Id.* at 376.

[59] *Id.* at 373.

[60] *Id.* at 373–74.

[61] *Id.* at 374.

[62] *Id.* (brackets in original).

period of the policy, Mrs. Tester took a leave of absence from her work for health-related reasons.[63] During her leave of absence, Mrs. Tester was killed in a car accident.[64] Mrs. Tester's husband subsequently submitted a claim to Reliance for death benefits.[65] Reliance denied the claim, finding Mrs. Tester was not in the eligible class as an "active, Full-time employee" because "she had been absent for several weeks and never fulfilled the minimum hourly requirement."[66]

Mr. Tester challenged Reliance's determination in federal district court.[67] The district court found the policy's term "active" in the eligibility provision to be vague and ambiguous.[68] The court ruled that "Reliance improperly denied Mr. Tester benefits because Mrs. Tester was an 'active' employee under the policy's terms and entitled to coverage as of the date of her death."[69] Reliance appealed, arguing that "any ambiguities in the eligibility provision are cured by the phrase 'Full-time'" because "the policy defines 'Full-time' as requiring an employee to work a minimum of 20 hours during the employee's regularly scheduled work week in order to qualify for the class eligible insurance."[70]

On *de novo* review, the Fourth Circuit rejected Reliance's reading of the policy. The Fourth Circuit first concluded that the term "active" was ambiguous because the policy "neither defines 'active,' nor provides a criteria for determining when an employee is 'active.'"[71] Next, the

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 376.

[67] *Id.* at 374.

[68] *Id.*

[69] *Id.*

[70] *Id.* at 376.

[71] *Id.* at 375.

9

Fourth Circuit reasoned that Reliance's reading did not cure the vague and ambiguous nature of the eligibility provision because under its "interpretation of the policy an employee who works two eight-hour days and then dies in an automobile accident on route to work would not be covered because he had not accumulated the requisite 20 hours for coverage."[72] Construing the ambiguous provision against Reliance, the Fourth Circuit held that "[n]o insured employee would reasonably expect his coverage to terminate if he died in an accident a few hours short of completing his mandatory 20–hour work week."[73]

Here, Reliance poses a similar basis for denial. Reliance argues that Carlile is not entitled to coverage because "he was not actively employed working at least 30 hours per week."[74] Moreover, in its June 12 denial letter, Reliance stated that "[t]o be deemed an *active* employee, you must have been working minimally 30-hours per week."[75] Based on this interpretation of the Plan, Reliance denied Carlile's claim; concluding Carlile was not an "*active, full*-time employee because he was not working at least 30-hours per week."[76] Reliance's attempts to cure the ambiguities inherent in the eligibility provision by substituting the Plan's definition for "Full-time" to define the undefined term "active" is unavailing. As in *Tester*, the Plan does not define the word "active," and does not provide a clear standard for the court to determine when an employee is active. The court therefore finds the term "active," to be ambiguous. Furthermore, the ambiguity of the term "active" is not resolved by reading it in conjunction with the eligibility provisions definition of "Full-time." The Plan defines "Full-time" as "working for . . . a

---

[72] *Id.* at 376.

[73] *Id.*

[74] Dkt. 35 at 14.

[75] JAR at LTD109 (Dkt. 34-1 at 110) (alteration in original).

[76] *Id.* at LTD109–10 (Dkt. 34-1 at 110–11) (alteration in original).

minimum of 30 hours during a person's regular work week."[77] Reliance argues that Carlile has provided no evidence that he worked 30 hours a week throughout the notice period.[78] Under Reliance's interpretation, however, Carlile would never be eligible for benefits–even if he applied while gainfully employed by LRI– because he was an "exempt employee" whose hours were not tracked by LRI.[79] Reliance's interpretation leads to an "absurd result"[80] and does nothing to resolve the ambiguity inherent in the eligibility provision. As such, the court construes the ambiguity against Reliance and in favor of the "reasonable expectations" of Carlile.[81] As an insured, Carlile would reasonably expect to be covered while he continued to perform his job responsibilities for LRI, LRI considered him a full-time employee, and LRI continued paying premium payments to Reliance on his behalf.[82]

Reliance argues that *Tester* is distinguishable because LRI considered Carlile terminated when it issued the notice of termination in March 2016.[83] As its name suggests, however, the notice of termination does not itself effectuate termination. Rather, it provides notice of the date

---

[77] *Id.* at LTD9 (Dkt. 34-1 at 10).

[78] Dkt. 35 at 14.

[79] JAR at LTD431 (Dkt. 34-2 at 162). The hours Carlile worked in a regular work week are of little relevance in terms of whether Carlile was an "active-Full-time employee" because he was not compensated based on the hours he worked each week. *See Memmott v. United of Omaha Life Ins. Co.*, No. 1:13-CV-25-DB, 2014 WL 4628548, at *8 (D. Utah Sept. 15, 2014) (stating hours worked by Mr. Memmott have even less relevance in this case where the Dealership compensates Mr. Memmott based on vehicles sold not based on hours worked").

[80] *See Tester*, 228 F.3d at 376 (finding Reliance's interpretation of the term "active" leads to an absurd result).

[81] *Pirkheim v. First UNUM Life Ins. Co.*, 50 F. Supp. 2d 1018, 1026 (D. Colo. 1999) (finding the common law doctrine of "reasonable expectations" applicable in ERISA insurance plans on de novo review when the policy is ambiguous), *aff'd sub nom. Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008 (10th Cir. 2000).

[82] In *Tester*, the Fourth Circuit gave "considerable weight" to the fact that Mrs. Tester paid premiums to Reliance when determining whether she was an "active, Full-time employee" under the policy. *Tester*, 228 F.3d at 377.

[83] Dkt. 38 at 21–22.

the employee will be terminated.  Here, Carlile's notice of termination clearly states his termination date would be June 20, 2016.  *Tester* is not distinguishable as Reliance suggests.[84]

Reliance further argues "that even if one infers from the business travel expense reports received from LRI that Plaintiff worked up to and including May 8, 2016 (the last day the expense reports indicate), Plaintiff's coverage would still have terminated on May 31, 2016."[85]  Meaning, his coverage would have ended prior to the time his disability arose.  Reliance's position, however, ignores evidence in the record provided by LRI that states Carlile "had worked in the office *throughout* the notice period,"[86] and Carlile's last day full-time active day worked was June 7, 2016.[87]

The court concludes Reliance incorrectly denied benefits on the basis that Carlile was ineligible for coverage because he was not an "active, Full-time employee" at the time he became disabled.  Carlile's Motion for Summary Judgement is therefore granted.

**B.**     **Remand is not an appropriate**

Next, Reliance argues that in the event the court determines Reliance incorrectly denied Carlile's long-term disability benefits, the case should be remanded.  If upon review of the administrative record, the court determines that a plan administrator improperly denied benefits, it must then consider the question of the appropriate remedy.[88]  As a remedy, the court "may either remand the case to the plan administrator for renewed consideration of the claimant's case

---

[84] *See also Kaelin v. Tenet Employee Ben. Plan*, No. CIV.A. 04-2871, 2006 WL 851243, at *5 (E.D. Pa. Mar. 31, 2006) (unreported) (finding "Reliance's determination [] arbitrary and capricious under the heightened standard").

[85]  Dkt. 35 at 16.

[86] JAR at LTD431 (Dkt. 34-2 at 162) (emphasis added).

[87] *Id.* at LTD480 (Dkt. 34-2 at 211).

[88] *Spradley v. Owens–Ill. Hourly Emp. Welfare Benefit Plan*, 686 F.3d 1135, 1142 (10th Cir. 2012).

or . . . order an award of benefits."[89] Remand is appropriate in instances where "the administrator "failed to make adequate factual findings or failed to adequately explain the grounds for the decision."[90] A case will not be remanded, however, to provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record.[91]

ERISA requires that when a plan administrator denies a claim, the administrator must provide the claimant with "[t]he specific reason or reasons for the adverse determination" and "[r]eference to the specific plan provisions on which the determination is based."[92] In reviewing a plan administrator's decision to deny benefits, the court will only consider "the evidence and arguments that appear in the administrative record."[93] "To determine whether a plan administrator considered and asserted a particular rationale, we look only to those rationales that were specifically articulated in the administrative record as the basis for denying a claim."[94] Therefore, the plan administrator's "decision to deny benefits must stand or fall" on those reasons articulated in the administrative record "alone."[95]

Reliance argues that the court should remand the case to Reliance so that Reliance may make a "determination on whether Plaintiff was totally disabled for 90 consecutive days as required

---

[89] *Flinders v. Workforce Stabilization Plan of Philips Petro. Co*., 491 F.3d 1180, 1194 (10th Cir. 2007) (citations omitted), *abrogated on other grounds by Metro Life Ins. v. Glenn*, 554 U.S. 105 (2008).

[90] *Spradley*, 686 F.3d at 1142.

[91] *Lynn R. v. ValueOptions*, No. 215CV00362, 2017 WL 3610477, at *9 (D. Utah Aug. 22, 2017) (holding the plan administrator "cannot raise precertification as a rationale for denial on remand, because it failed to raise it in the administrative record").

[92] *Spradley*, 686 F.3d at 1140 (quoting 29 C.F.R. § 2560.503–1(g)).

[93] *Flinders*, 491 F.3d at 1190.

[94] *Id*. at 1190–91.

[95] *Id.* at 1193.

13

under the policy before benefits are payable and whether he has remained totally disabled."[96] The court disagrees. Reliance admitted in in its June 12 denial letter that it was "not disputing the fact that as of June 9, 2016, [Carlile] would have been deemed Totally Disabled under the Policy."[97] The court will not provide Reliance an opportunity to assess coverage for Carlile's total disability claim on the grounds it requests when it has already admitted that Carlile "would have been deemed Totally Disabled under the Policy."

Even if Reliance had not already admitted Carlile was totally disabled under the policy, remand would still be inappropriate because Reliance did not raise the issues on the administrative record. During the administrative process, Reliance had ample opportunity to conduct a thorough investigation of Carlile's claim, and set forth specific reasons for denial. However, it did not assert or reserve any other bases for denial other than the one the court has now rejected. There is nothing for Reliance to consider on remand, and the court awards judgment in favor of Carlile.

## IV. CONCLUSION

For the reasons discussed above, the court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary.

SO ORDERED this 29th day of April, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[96] Dkt. 38 at 32.

[97] JAR at LTD111 (Dkt. 34-1 at 112).