**IN THE UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF UTAH**

| | |
|---|---|
| DAVID G. CARLILE,<br><br>    Plaintiff,<br><br>  v.<br><br>RELIANCE STANDARD INSURANCE COMPANY and RELIANCE STANDARD LIFE INSURANCE POLICY NUMBER LTD 123420,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-1049<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Before the court is Reliance Standard Life Insurance Company's (Reliance) and  Reliance Standard Life Insurance Policy Number LTD 123420's (the Policy) Motion to Alter Judgment.[1] For the reasons articulated more fully below, Defendants' Motion is DENIED.

On April 29, 2019, the court issued an Order[2] and Judgment[3] against Defendants.  In its Order, the court granted Plaintiff David Carlile's Motion for Summary Judgment[4] on the grounds Defendants improperly denied his claim for long-term disability benefits.[5]  The court further concluded that, as a remedy, it was unnecessary to remand the case back to Defendants.  Accordingly, the court made an award of benefits to Carlile.  The court's determinations on these

---

[1] Dkt. 50.

[2] Dkt. 46.

[3] Dkt. 47.

[4] Dkt. 33.

[5] Dkt. 46 at 12.

issues resulted in a denial of Defendants' Motion for Summary Judgment.[6]  Defendants now move the court to amend the Order and Judgment based on three theories.[7]  First, Defendants argue the Order was contrary to controlling Tenth Circuit precedent.[8]  Second, Defendants argue the Order was in clear error in failing to apply the plain language of the Policy.[9]  And third, Defendants argue the case must be remanded for further review of the claim to determine if any benefits are owed.[10]

## I.       Legal Standard

Under Federal Rule of Civil Procedure 59(e), a motion to alter or amend judgment may be granted when "the court has misapprehended the facts, a party's position, or the controlling law."[11]  "[O]nce the district court enters judgment, the public gains a strong interest in protecting the finality of judgments."[12]  A motion to alter or amend a judgment may be based only on "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice."[13]  Such motions are "not appropriate to revisit issues already addressed or advance arguments that could have been raised prior to the entry of judgment."[14]

---

[6] Dkt. 35.

[7] Dkt. 50.

[8] *Id*. at 4.

[9] *Id*. at 7.

[10] *Id*. at 8.

[11] *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citation omitted).

[12] *Id.*

[13] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[14] *Nelson*, 921 F.3d at 929 (quoting *Servants of Paraclete*, 204 F.3d at 1012) (internal quotation marks omitted).

## II.     The Court Did Not Ignore Tenth Circuit Precedent

Defendants argue the Tenth Circuit decision in *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan*[15] is binding precedent the court ignored in its decision.[16]  This is not so.

The Tenth Circuit, in *Bartlett*, confronted a "unique set of circumstances" concerning which of two benefit plans the plan administrator could consider for purposes of paying or denying plan benefits.[17]  Bartlett was given the option to elect into a new employee benefits plan.[18]  Prior to making his election, Bartlett was provided an employee flex benefits workbook which explained he would be eligible for plan benefits as long as he was employed as a "regular full-time employee."[19]  After electing to obtain life insurance benefits through the plan, Bartlett was diagnosed with cancer and was unable to return to work before his death.[20]  After his death, Bartlett's wife sought payment of the life insurance benefits.[21]  The plan administrator denied payment of plan benefits, relying on language in the summary plan description which was printed after Bartlett's death—and not in the flex benefits workbook.[22]  The summary plan description required employees to be "regular full-time active employees."[23]  The plan administrator determined that because Bartlett was not "active" at work at the time of his death,

---

[15] 38 F.3d 514 (10th Cir. 1994).

[16] Dkt. 50 at 4.

[17] *Bartlett*, 38 F.3d at 518.

[18] *Id.* at 516.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

he was not eligible for benefits.[24]  Bartlett's wife brought suit under ERISA claiming the administrator improperly relied on the language in the summary plan description.[25]  On appeal, the Tenth Circuit was called upon to determine whether the summary plan description or the flex benefits workbook constituted the benefit plan that governed the issuance of plan benefits.[26]  In addressing the issue, the Tenth Circuit explicitly limited its holding to the unique facts of the case.[27]  Namely, "the drafting of the workbook and the timing of the publication of the summary description, as well as the circumstances of the decedent's death."[28]  The Tenth Circuit then concluded the workbook, and not the summary plan description, constituted the benefit plan for issuance of Bartlett's benefits.[29]  The Tenth Circuit then determined Bartlett was eligible for benefits because under the terms of the workbook he was a "regular full-time employee" at the time of his death.[30]  After reaching this conclusion, however, the Tenth Circuit stated that Bartlett's condition could disqualify him "from being actively working" if the language of the summary plan description were to have applied at the time of his death.[31]

This case does not present the unique circumstances that existed in *Bartlett.*  This case does not involve the drafting of a workbook, the timing of the publication of the summary plan description, or circumstances regarding the death of a Plan beneficiary.  The Tenth Circuit

---

[24] *Id.*

[25] *Id.*

[26] *Id.* at 517.

[27] *Id.*  at 518.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 519.

[31] *Id.*

expressly limited its holding to these specific facts. The holding in *Bartlett* is thus not controlling precedent for this case.

Even if the court believed *Bartlett* set a precedential standard for this case, however, the court considers Defendants' reliance on *Bartlett* to be unavailing. Defendants argue that *Bartlett* stands for the proposition that including the term "active" in a Plan limits the payment of benefits to "regular full-time employees who were actively working."[32] The court disagrees with Defendants' statement of the case. The issue before the Tenth Circuit was not whether the term "active" would limit payment of benefits. Rather, the concern was which of two plans governed the issuance of benefits. Because the Tenth Circuit concluded the flex benefits workbook governed the payment of benefits, any assessment of the term "active" in the non-governing summary plan description is dicta.[33] And this court is "bound by holdings, not dicta."[34]

### III. The Order Does Not Contain Clear Error Interpreting the Plain Language of the Plan

In the Order, the court construed Defendants' denial of Carlile's claim to be based on the fact that Carlile was not an *active* employee. In the denial letters sent to Carlile, Defendants stated, "[t]o be deemed an *active* employee, you must have been working minimally 30-hours per week."[35] The denial letters integrated the minimum hour requirement from the definition of "Full-time" to alter and attempt to breathe life into the term "active."[36] Under this

---

[32] Dkt. 50 at 6.

[33] *Tokoph v. United States*, 774 F.3d 1300, 1303 (10th Cir. 2014), *as amended on reh'g* (Jan. 26, 2015) (stating "dicta are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand").

[34] *Id.*

[35] JAR at LTD103 (Dkt. 34-1 at 104) (emphasis in original).

[36] In the Order, the court states, "the ambiguity of the term 'active' is not resolved by reading it in conjunction with the eligibility provisions definition of 'Full-time.'" (Dkt. 46 at 11.)

interpretation, the court determined the Plan language to be ambiguous and it "construe[d] the ambiguity against Reliance and in favor of the 'reasonable expectations' of Carlile."[37]

Construing the Plan language more liberally, the court still determines denial of coverage inappropriate. "In interpreting [the plan], we begin with the relevant language. When the terms of [the plan] are unambiguous, our inquiry is complete, except in rare and exceptional circumstances."[38] The Plan defines "Full-time" as "working for . . . a minimum of 30 hours during a person's *regular* work week."[39] Because the Plan does not define "regular," the court must give the term its ordinary meaning.[40] "Regular" is defined as "constituted, conducted, scheduled, or done in conformity with established or prescribed usages, rules, or discipline; recurring, attending, or functioning at fixed, uniform, or *normal* intervals."[41] Thus, the court understands "regular" within the Plan to mean the normal state of employment. Under these circumstances, the normal state of employment was the period of employment preceding Carlile's Notice of Termination. The work weeks following the Notice of Termination, during which Carlile was paid upfront and allowed to work on a voluntary basis,[42] were decidedly irregular.

Because Defendants misinterpreted the Plan language on eligibility, specifically that a "Full-time" employee's hours are counted on a week to week basis rather than based on the *normal* work week, they repeatedly focused requests for evidence of hours worked during this irregular

---

[37] Dkt. 46 at 11 (citations omitted).

[38] *Aulston v. U.S.*, 915 F.2d 584, 589 (10th Cir. 1990).

[39] *Id*. at LTD9 (Dkt. 34-1 at 10) (emphasis added).

[40] *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010) (quoting *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)).

[41] *Regular*, MERRIAM-WEBSTER.COM (2019), https://www.merriam-webster.com/dictionary/regular.

[42] *Id*. at LTD480 (Dkt. 34-2 at 211).

period.[43]  As such, Defendants were making requests for evidence—and ultimately formulating a denial—that were unsupported by the Plan language.  Therefore, the court concludes Defendants inappropriately denied Carlile coverage.

Notwithstanding Defendants' inadequate factual findings, the court concludes the record clearly shows Carlile is entitled to benefits.[44]  The evidence shows that Carlile's employer, Lighthouse Resources, Inc. (LRI), considered Carlile eligible under the Plan as a full-time employee.  LRI responded to Defendants' inquiries regarding Carlile's full-time status by stating that Carlile "ha[d] been eligible [under the Plan] since his DOH with no gaps in coverage," indicating LRI indeed considered Carlile a "Full-time" employee as articulated by the Plan.[45] Defendants ignored direct evidence that detailed Carlile's status as a "Full-time" employee with LRI and in so doing improperly denied benefits.

## IV.  Remand Is Not Necessary for a Determination of Benefits Owed

Defendants move to alter the court's Order under Rule 59 based on new evidence previously unavailable and to prevent manifest injustice.[46]  The court disagrees.  The new evidence proposed by Defendants relates to whether Carlile was Totally Disabled under the terms of the Plan.  Defendants maintain Carlile was not totally disabled beginning on April 14, 2017, because he was able to start a new job. [47]  This evidence, however, was not previously unavailable. Carlile applied for long-term disability benefits on October 16, 2016.[48]  He filed suit in September 2017—nearly five months after he allegedly started the new job.

---

[43] *See, e.g., id.* at LTD99 (Dkt. 34-1 at 100); *id.* at LTD426–27 (Dkt. 34-2 at 157–58).

[44] *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1015 (10th Cir. 2008).

[45] JAR at LTD480 (Dkt. 34-2 at 211).

[46] Dkt. 50 at 9–11.

[47] *Id.* at 9.

[48] Record at STD145 (Dkt. 36-1 at 100).

Defendants had ample opportunity to assess whether Carlile satisfied the 90-day Elimination Period from the time he applied for benefits until the time he filed suit in September, 2017,[49] and could have presented it as part of the administrative record, but chose not to do so.  Defendants may not prolong litigation by making piecemeal denial of benefits.  The evidence was sufficiently before the Defendants to make a determination on this issue and their "decision to deny benefits must stand or fall" on the reasons articulated in the administrative record "alone."[50]

Defendants then argue they would face manifest injustice if required "to pay benefits which Plaintiff may not be entitled to receive under the terms of the plan."[51]  Defendants insist remand is necessary to make an eligibility determination, particularly because "the administrator retains the primary role in making eligibility decisions."[52]  Defendants point  to *Conkright v. Frommert*[53] in support of their position.  The court finds this case distinguishable.  *Conkright* dealt with the issue of remand when *Firestone* deference applied to the plan administrator's decision regarding eligibility for benefits.[54]  Simply put, Defendants' decisions are not entitled to *Firestone* deference.[55]  Thus, the issues implicated in *Conkright* are not applicable to this case, and no manifest injustice is done by declining to remand the case to Defendants to make other eligibility determinations.

---

[49] *See* dkt. 2.

[50] *Spradley*, 686 F.3d at 1193.

[51] Dkt. 50 at 11.

[52] *Id.*

[53] 559 U.S. 506 (2012).

[54] *Id.* at 517.

[55]  The parties agree that no deferential standard applies to Reliance's eligibility determinations. *See* dkt. 46 at 7.

Defendants finally argue the court would err if it orders payment when there has been no decision by the Plan.[56]  Defendants' position evidences a fundamental misunderstanding of the court's Order.  The court's Order and Judgment reflects only the relief requested in Carlile's Motion for Summary Judgment, which was to conclude Carlile "was an 'active, full-time employee' and thus eligible for benefits."[57]  The court made no determination regarding what Defendants owe under the terms of the Policy.  Any challenge to the court's Order and Judgment on that basis are misplaced.  To the extent Defendants are challenging Carlile's continuing disability, that is not an issue for remand but would involve new proceedings.  Defendants request for remand is DENIED.

## V.      Conclusion

For the reasons discussed above, the court DENIES Defendants' Motion to Alter or Amend the April 29, 2019 Memorandum Decision and Order, and Judgment in a Civil Case.[58]

SO ORDERED this 25 day of July, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[56] Dkt. 50 at 10.

[57] Dkt. 33 at 15.

[58] Dkt. 50.